**Dated: March 13, 2007**

**The following is ORDERED:**



_____
Tom R. Cornish
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE:

**HERMESCH ENTITIES I:**                    Case No. 06-80342
a/k/a Hermesch Entities, Inc.

**DAVID E. HERMESCH**                        Case No. 06-80343
d/b/a Hermesch Harvesting
**TAMMY K. HERMESCH**                        Jointly Administered Under
                                            Case No. 06-80342
                                            Chapter 12

<u>**O R D E R**</u>

On the 12th day of February, 2007, the Debtor's First Amended Plan of Reorganization Under

Chapter 12 ("Plan"), Objection of BancFirst, Coweta, Oklahoma, to Confirmation of Debtor's First

Amended Plan of Reorganization Under Chapter 12, Objection by the State of Oklahoma ex rel.

Oklahoma Tax Commission to Debtor's First Amended Plan of Reorganization Under Chapter 12,

and Objection to Amended Chapter 12 Plan and Brief in Support, filed by Deere & Company, came

on for evidentiary hearing.  Counsel appearing were James Brunson for the Debtors, Richard Ogden

and Russell Wantland for Deere & Company ("Deere"), Dianne Smith for BancFirst, and Lonnie

Eck, Chapter 12 Trustee. After hearing evidence presented, this Court does hereby enter the following findings and conclusions in conformity with Rule 7052, Fed. R. Bankr. P., in this core proceeding.

The above-referenced Chapter 12 bankruptcy cases were both filed on June 7, 2006. Debtors are in the farming and custom harvesting business. They harvest wheat, soybeans and grains. Mr. Hermesch has been in the farming business since 1979, and began a business relationship with Deere in 1980. Mr. Hermesch began custom harvesting in 1985. During the harvesting season, Mr. Hermesch travels from Texas to Canada, performing custom harvesting jobs in several states and Canada along the way. In 2005, Debtors began falling behind in their payment obligations to Deere, and eventually filed for bankruptcy relief.

At the time of the bankruptcy filing, Debtors were current on some of their obligations to Deere, but not all due to cross collateralization of notes and collateral. Mr. Hermesch testified as to the crop and harvesting conditions before the bankruptcy filing. He stated that 2005 was not a good year due to spotted droughts and hail. Mr. Hermesch estimated a 60-70% reduction in crop yields during 2006, stating that 2006 was a disastrous year due to a prolonged drought in the Midwestern United States.

Mr. Hermesch believes that 2007 will be a much better year than 2005 and 2006, noting the moisture levels are high and a rise in wheat and soybean prices. Debtors plan to custom harvest 39,400 acres in 2007, compared to the 17,900 acres harvested in 2006 and 28,000 acres harvested in 2005. Debtors will start custom harvesting in mid-May in Texas and will start receiving payments in early June. Mr. Hermesch also stated at trial that Mrs. Hermesch now has full-time employment as a Registered Nurse at Saint Francis Hospital in Tulsa, Oklahoma. Mrs. Hermesch was not

Case 06-80342   Doc 225   Filed 03/13/07   Entered 03/13/07 12:25:13   Desc Main
Document      Page 2 of 8

employed full-time prior to 2006, and this will add significant income to support the family and help pay obligations.

Debtors' Exhibit 1 is a budget overview for 2007. Debtors' income includes sales and income from farming, custom harvesting income, and trucking income. Debtors' expenses include farm expenses such as rent, equipment, insurance, supplies and utilities. Debtors' personal living expenses are quite frugal. Harvesting expenses include hauling, insurance, lodging, meals and wages. Trucking expenses include freight, insurance, meals, tags and supplies. Debtors' estimated income for 2007 totals $473,590. In arriving at this number, Mr. Hermesch looked at crop yield averages for the last three years, as well as expenses. Mr. Hermesch also factored in an increase in custom harvesting income and favorable rising moisture levels. Mr. Hermesch stated that the income levels will likely be higher than estimated, due to current moisture levels and higher trucking income.

The Hermesch's federal tax returns for 2004 and 2005 show adjusted gross income of $60,146.00 and $123,186.00, respectively. The 2004 and 2005 federal tax returns for Hermesch Entities, Inc. show total income of $1,342,268.00 and $1,174,170.00, respectively. Ordinary business income of Hermesch Entities, Inc. in 2004 totals $57,905.00, and 2005 returns show a loss of $22,784.00.

The Plan shows plan payments as follows:

|  | Creditor Pmt | T'ee Fee | Total |
| --- | --- | --- | --- |
| June 1 | $ 3,333.00 | $ 183.32 | $ 3,516.00 |
| July 30 | $ 129,426.67 | $ 7,118.47 | $ 136,545.14 |
| December 30 | $ 16,572.00 | $ 911.46 | $ 17,483.00 |

3

|            |              |            |               |
|------------|--------------|------------|---------------|
| January 30 | $ 129,426.67 | $ 7,118.47 | $ 136,545.14  |
|            |              |            | $ 294,090.05  |

Deere is to receive $ 71,419.22 from the July 30 and January 30 plan payment. The Plan further provides that if any payment to Deere is more than 30 days delinquent, the Trustee has the right to submit to the Court an ex-parte order dismissing the Debtors' case.

Debtors did not hire an accountant or financial expert to calculate budgets or prepare financial reports and projections. Debtors could not afford to hire a financial expert, therefore Mr. and Mrs. Hermesch prepared the financial reports themselves. It was noted at trial that Mr. and Mrs. Hermesch are not accountants, and may not have used the financial software correctly in preparing their financial reports. However, Debtors do use an accountant to prepare their tax returns, corporate and individual, and the Debtors are most familiar with their income and expenses.

An Order Confirming Plan was entered December 20, 2006. Following confirmation, an Agreed Order between the Debtors, BancFirst, American State Bank and the Trustee was entered. This Agreed Order resolved BancFirst's Objection to Debtors' Plan, made a minor modification to the claim of American State Bank to include corrected VIN numbers on equipment, and provided corrected trustee fees. On January 22, 2007, this Court granted Deere's Emergency Application to Vacate Order Confirming Chapter 12 Plan and set the Plan and Objections for evidentiary hearing.

Deere objects to the Plan and argues that the Plan is not feasible; the Plan proposes to pay Deere for a term of five years; and fails to distribute an amount equal to the allowed amount of Deere's claim. The Court heard testimony from Rob Schaff, a consultant hired by Deere with accounting experience. Mr. Schaff was hired by Deere to examine the Debtors' financial records and to testify as to their content and accuracy. Mr. Schaff has never appeared as an expert witness

4

in a Chapter 12 bankruptcy case and has no background in agriculture. His testimony was not very helpful to the Court in determining the feasibility of the proposed plan.

The Trustee stated at trial that based on Mr. Hermesch's testimony regarding moisture levels and crop prices, additional trucking, and Mrs. Hermesch's full-time employment, the Trustee supports confirmation. The Trustee further advised the Court of the good condition of the equipment. He said the fact that the first plan payment deadline is fast approaching, that a default would likely result in the dismissal of the case if that payment cannot be made.

Section 1222(b)(9) provides that a plan may "provide for payment of allowed secured claims consistent with section 1225(a)(5) of this title, over a period exceeding the period permitted under section 1222(c)." Section 1222(c) states that, with the exception of subsections 1222(b)(5) and (b)(9), a plan may not provide for payment beyond three years unless the court for cause approves a longer period up to five years.

Section 1225(a)(5) provides that this Court shall confirm a plan if, with respect to each allowed secured claim provided for by the plan, "the plan provides that the holder of such claim retain the lien securing such claim;" and "the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim."

The Debtors' plan values Deere's security at $566,000.00. Deere objects to this valuation, stating that the value should be $626,000.00. This Court heard evidence regarding the value of Deere's security, which consists of several pieces of equipment, at the August 22, 2006 hearing. In an Order entered August 24, 2006, this Court granted monthly adequate protection payments to Deere in the amount of $6,000.00. This Court did not determine the value of the equipment in that

5

Order.  Deere's appraiser determined the wholesale value of the equipment to be $506,000.00 and the retail value to be $626,000.00, with an average value of $566,000.00.  Deere's appraiser also determined that the equipment is depreciating at a monthly rate of $29,565.00.  Mr. Hermesch keeps the equipment in good condition and all the equipment is insured.  In the plan, Debtors use the average value submitted by Deere's appraiser.  This Court finds that the equipment should be valued at $566,000.00.  Further, this Court finds that a payment term beyond three years is reasonable in this case.

The Court shall confirm a plan if a debtor will be able to make all payments under the plan and comply with the plan provisions.  11 U.S.C. § 1225(a)(6).  In farm cases, feasibility is never certain; however, it is the element that is difficult to prove, equally difficult to decide.  *Matter of Bluridg Farms, Inc.,* 93 B.R. 648, 656 (Bankr. S.D. Iowa 1988).  Feasibility is a question of the credibility of the experts and the debtor.  *In re Crowley,* 85 B.R. 76, 78-79 (W.D. Wisc. 1988).

Courts have held that "a chapter 12 debtor should be given the benefit of the doubt regarding feasibility when the debtor's plan projections - using reasonable input in light of the current economic climate - indicates that it is reasonably probable that a debtor can satisfy the plan payments."  *In re John V. Francks Turkey Co., Inc.,* 251 B.R. 441 (10th Cir. BAP 1999) (table) (citing *First Nat'l Bank v. Hopwood (In re Hopwood),* 124 B.R. 82, 86 (E.D. Mo. 1991); *Farmers Home Admin. v. Rape (In re Rape),* 104 B.R. 741, 748 (W.D. N.C. 1989)).  The debtor does not have to guarantee success of the plan but must provide reasonable assurance that the plan can be effectuated.  *In re Ames,* 973 F.2d 849, 851 (10th Cir. 1992); *Hopwood,* 124 B.R. at 846.  The determination of feasibility requires:

> that the projected income and expense figures are achievable in light of past operations, present ability and anticipated future conditions in the particular market

Case 06-80342    Doc 225    Filed 03/13/07    Entered 03/13/07 12:25:13    Desc Main
Document    Page 6 of 8

in which the debtor is involved . . . .In order to accomplish this mandate, this Court traditionally examines the debtor's business performance on two fronts: one, pre-Petition, wherein the history of the debtor is evaluated at its peaks and its valleys during operation; and two, post-Petition, wherein attempts at recovery are made after the debtor is afforded the protection of the U.S. Bankruptcy Code. These are the only sources for concrete information of the debtor's past, present and future abilities to succeed in consideration of economic conditions.

*In re Cluck,* 101 B.R. 691, 694 (Bankr. E.D. Okla. 1989).

In the present case, Debtors' predictions are optimistic in light of the losses for 2005 and 2006. However, present conditions are favorable and Debtors' predictions do not appear to be out of reach. What is surprising to this Court, is that Debtors' and Deere's valuation of the equipment is very close. Debtors' figures appear reasonable and rising crop prices coupled with good moisture levels give credence to Debtors' predictions. Debtors' trucking income will increase and Mrs. Hermesch now has full-time employment. Further, Debtors' projections for 2007 appear to have a sufficient factual basis. While the historical numbers for 2005 and 2006 do not support Debtors' predictions, Mr. Hermesch's testimony as to the poor weather and market conditions during those years, as well as the Debtors' performance prior to 2005, show this Court that Debtors have the ability to perform under the proposed Plan. They should be given a chance and are on a short leash to perform or be in default. Debtors are most familiar with their income and expenses, and Debtors were able to meet their debt obligations in 2003 and 2004.

IT IS THEREFORE ORDERED that the Objection to Amended Chapter 12 Plan and Brief in Support, filed by Deere & Company, is **denied.** A separate Order confirming the Plan will be entered.

IT IS FURTHER ORDERED that the Objection filed by BancFirst is hereby **resolved.** The parties are directed to submit an Amended Agreed Order no later than **March 23, 2007.**

Case 06-80342   Doc 225   Filed 03/13/07   Entered 03/13/07 12:25:13   Desc Main
Document   Page 7 of 8

IT IS FURTHER ORDERED that the Objection filed by the Oklahoma Tax Commission is **resolved.** The parties are directed to submit an Agreed Order no later than **March 23, 2007.**

### 

Case 06-80342   Doc 225   Filed 03/13/07   Entered 03/13/07 12:25:13   Desc Main
Document      Page 8 of 8